By the Court. Duer, J.
This is a case of slight importance in respect to the sum in controversy; but it involves questions that have seemed, to us worthy of our attentive consideration.
The first of the questions is, whether, upon the evidence before the referee, and the facts as found by him, the plaintiff was entitled to recover -the sum demanded in the complaint? The second, whether, upon the supposition that he was so entitled, the variance between the proof and the complaint was such as to create a bar to his recovery in the present aotion ? Each of these questions has been determined by the referee in favor of the defendants. In relation to the first, we have come to the conclusion, for the reasons that I shall proceed to state, that it must now be determined in favor of the plaintiff.
The sum for which judgment is demanded in the complaint is, the difference between the amount of the note of Bailey & Brothers, which was transferred to the defendants, and that of the debt which, at the time of the transfer, was owing to them from the plaintiff; and the question is, whether any breach of the agreement of the parties, as found by the referee, was proved, which entitled the plaintiff to recover the whole, or any part of the sum, he demanded ?
The referee has found that, when the note of Bailey & Brothers, the collection of which was guaranteed by Mrs. Overacre and the plaintiff, was placed in the hands of the defendants, and accepted by them in payment of the debt then due to them from the plaintiff, they agreed, not absolutely to pay him the difference between the amount of their debt and that of the note, but to remit to him the surplus when collected or recovered by them, from any source; and for the purposes of this opinion, it may be admitted that this finding of the referee is justified by the evidence. What, then. *301 are the consequences ? Plainly this, that the defendants, by accepting the note of Bailey & Brothers upon these terms, were bound, in justice to the plaintiff, to use all reasonable and legal diligence in its collection, and had no right, without his consent to extend the time of its payment, and still less to substitute any new security, payable on a future day, in place of that to which the guarantee of the plaintiff, and the prior guarantee of Mrs. Overacre, alone related. The defendants, however, instead of prosecuting to a judgment the suit which they had commenced against Bailey & Brothers, without the consent or knowledge of Mrs. Overacre or the plaintiff, divided the amount of the note they had received, with the interest accrued thereon, into two equal sums, and for each sum took from Bailey & Brothers a new note, payable, with interest, to them or order, the first note at six months, and the second at eight months from the date of the arrangement, and if this arrangement was, in judgment of law, and so far as the rights of the plaintiff are concerned, equivalent to á collection in money of the note which he had transferred, his right to maintain the action was fully established, and the conclusion of the referee, that the complaint ought to be dismissed, unless it was rendered necessary by the state of the pleadings, a manifest error.
We are clearly of opinion that the legal effect of the arrangement thus made with Bailey & Brothers, was precisely that which has been stated. The acceptance of the new notes, so far as the rights of the plaintiff are concerned, necessarily operated as a satisfaction of the old, and the defendants took upon themselves exclusively the risk of the ultimate payment of the notes they had received; they could not cast this risk, or any portion of it, upon Mrs. Overacre or the plaintiff. The effect of the arrangement was, to annul her guarantee as well as that of the plaintiff, as they had no longer any interest in the collection of the original note; in respect to them it was satisfied, and the plaintiff had, therefore, an immediate right to demand the payment of the sum which, in the event of its collection, the defendants had promised to remit. These positions we hold to be correct, both upon principle and upon the authorities.
That the defendants were bound to use all reasonable and legal diligence -in the collection of the note transferred to them cannot be doubted. Their agreement to remit to the plaintiff a portion *302 of the proceeds when collected, implied and imposed the duty of collection. To the extent of the plaintiff’s interest they were his agents for the collection of the note, and, without his authority, could make no arrangement by which his rights as to the mode and time of its collection could be varied or affected. An agent for the collection of a debt can receive its payment only in money. He cannot release nor compound the debt, nor, by parity of reasoning, extend the time of its payment. (Todd v. Reid, 4 B. & Ald. 210; Russell v. Bagley, id. 395; Story on Agency, §§ 9, 161, 215, 413.) Hence, the defendants, in discontinuing the suit which they had commenced against the makers of the note, and in accepting their notes, payable on a future day, for the whole amount of the debt, acted at their own peril, and were guilty of a violation of duty which rendered them immediately liable to the plaintiff; just as a factor who sells upon credit the goods entrusted to his charge, and which he was authorized to sell only for money, is at once liable to his principal for their price or value. (1 Young & Jer. 389; 26 Wend. 192; 2 Will. 259; Story on Agency, § 109.)
In each case, the extension of credit without authority creates the liability. Certainly the plaintiff was not bound to wait for the balance of the original note to which he was entitled, and for which he had received no consideration, until the notes taken by the defendants from Bailey & Brothers should be paid at their maturity or otherwise. As these notes were taken without his authority or consent, he had the right to say that they were taken by the defendants at their own risk, and, therefore, to the extent of his interest in the original note, operated as an actual payment; or to express the proposition in other words, but with the same result, that the defendants, by their departure from their duty as his agents had become his immediate debtors for the sum which, on his behalf; they had undertaken to collect.
There are other views of the subject which lead necessarily to the same conclusion.
The collection of the original note of Bailey & Brothers was guaranteed to the plaintiff by the payee, Mrs. Overacre, and we are bound to presume that he relied upon her guaranty, in giving his own, and looked to her solvency as protecting him from loss, in the event of the insolvency of the makers. Hence, if the effect of the arrangement made by the defendants with the makers was *303 to release Mrs. Overacre from all liability for their default, the character and value of the note, as a security, were so essentially changed that it was no longer the note which .the plaintiff had guaranteed, and he, as well as Mrs. Overacre, was freed from the risk of its future collection. By thus acting the defendants made the note their own sole property, and, taking upon themselves the whole risk of its collection, became at once liable to the plaintiff for his proportion of the debt it had been given to secure. They had included this sum in the notes which, without authority, they had taken, and were thus estopped from saying that it had not been collected.
That the effect of the arrangement made by the defendants with Bailey & Brothers, was to annul the guarantee of Mrs. Over-acre and discharge her from all liability, cannot be doubted. A guarantee of the collection of a promissory note, or other evidence of a debt, does not mean that it shall be paid at its maturity, but that, by a prompt and diligent use of the means which the law affords, its payment may be enforced. Hence, if the debt so guaranteed is unpaid at its maturity, the creditor, if he wishes to retain the liability of the guarantor, must, without delay, commence proceedings for its recovery, and it is only when he can show that all the remedies which the law gave him against the debtor had been exhausted, that he is in a condition to demand payment of the debt from the guarantor. If he delay, without necessity, to commence the necessary proceedings, or, when an action has been commenced, to prosecute it to judgment and execution, the delay is imputed to him as “ laches" and the guarantor is discharged. (Taylor v. Bullen, 6 Cow. 624; Compton v. McNair, 1 Wend. 455; Eddy v. Stanton, 21 Wend. 255; Moakly v. Riggs, 19 John. 69; Loveland v. Shepherd, 2 Hall, 159; Burt v. Horner, 5 Barb. 501.)
It is needless to dwell upon the application of these remarks to the case before us. It is obvious and decisive. According to the authorities to which we have referred, the abandonment by the defendants, without the consent of Mrs. Overacre, of the suit which they had brought against Bailey & Brothers, was alone sufficient to discharge her.
But we shall not stop here. The discharge of Mrs. Overacre, in the present case, does not rest merely upon the “laches" but *304 upon the positive acts of the defendants. Hence, the same consequence would have followed, had she guaranteed the payment and not merely the collection of the original note of Bailey & Brothers, or had the note been payable to her order and she had been duly fixed as an indorser.
It is familiar law, that a surety is discharged in all cases where it appears that, without his assent, the time of payment by an agreement, binding on the creditor, was extended to the debtor, and this even when it is certain that the extension of credit worked no injury whatever to the surety, (Gahn v. Niemcewitz, 11 Wend. 312, Nelson, J.; Hoffman v. Hubbert, 13 Wend.; Hubby v. Bowen, 10 John. 70; Miller v. McCan, 7 Paige, 455; Bangs v. Strong, 10 Paige, 11, S. C. affir.; 7 Hill, 250; Boner v. Tiernan, 3 Denio, 378; Hubbell v. Carpenter, 3 Barb. 520); and it is equally well settled that the taking of a bill or note from the debtor, payable on a future day, suspends, until then, the creditor’s right of action for the original debt, and therefore operates, in all cases, as an extension of credit, by which not merely an ordinary surety, but an indorser, not assenting to the transaction, is discharged. (Putnam v. Lewis, 8 John. 389; Myers v. Wells, 5 Hill, 465; Bank of Orleans v. Barry, 1 Denio, 116; Holmes v. De Camp, 1 John. 34; Burdick v. Green, 15 John. 243; Colemard v. Lamb, id. 349; Jackson v. Hacksley, 16 John. 273; Fellows v. Prentiss, 3 Denio, 512; McLean v. La Fayette Bank, 3 McLean, 589.) In the case last cited, an evidence on a promissory note, which had been unused by all parties except himself, was held, by Mr. Justice McLean and his associate, to be discharged, upon the ground that as to him the renewal operated as a payment. (3 McLean, 620.) The case of Myers v. Welles, although differing in its circumstances, was decided by our Supreme Court in favor of an indorser, upon the same principle, namely, that by taking other notes from the makers for the same debt, credit had been extended to him, without the defendant’s knowledge or assent, and in the case of Fellows v. Prentiss, it was held, by the court of errors, that the' taking from the debtor his promissory note, payable only one day from its date, was an effectual discharge of his surety; and that parol evidence to show that the note was given merely as a memorandum of the sum due, and not as an extension of credit, *305 as contradicting the plain meaning and legal effect of the instrument, was inadmissible.
It is therefore apparent that the cases upon which the referee, in his written opinion, seems to have relied, have no application. The cases which he has cited, only prove what, as a general r'nle, is undoubtedly true, that the taking from the debtor his promissory note for an existing debt, is not, as between the parties an absolute satisfaction of the debt; but they do not prove that in such cases the creditor’s right of action is not suspended until the note he has taken becomes due, nor consequently, that the note is not conclusive proof of an extension of credit, by which a surety or indorser is discharged. There is, in truth, no conflict in the decisions, and those to which I have referred, conclusively show that a negotiable note taken from a debtor, even as between the immediate parties, is a conditional satisfaction of the debt which forms its consideration, and that in respect to a surety, whether a guarantor or indorser, whose assent to the transaction is not proved, the satisfaction which it works and of which it is evidence, is absolute. It may be true that, had the defendants retained the possession of all the notes of Bailey & Bros., they might have had an election to sue the makers upon those last taken, or upon that which the plaintiff had transferred to them; but it is certain, that until the notes last taken were unpaid when due, the defendants had no right to sue at all, and equally so, that by this voluntary suspension of their right of action, the sureties on the note transferred to them, were wholly discharged; and it has already been shown, that this is all that was necessary to be proved to render the defendants liable in the present action.
Speaking for myself, I am convinced that, by the immediate effect of the arrangement made by the defendants with Bailey & Bros., the original note which the defendants then held, as an evidence of debt, was satisfied and extinguished. The notes taken by the defendants under this arrangement, were made payable to their own order, not to that of the payee in the original note; they were taken for the whole sum, including interest then due on the original note, and as they carried interest, they converted into principal, the interest they included. The notes thus taken, it seems to me, in their substance, as well as in their form, were a new contract, by which that then subsisting between the parties *306 was displaced and superseded; and I observe, with gratification, that in Fellows v. Prentiss, where the notes taken from the debtor were of a similar character, Chancellor Walworth expressed an opinion to the same effect.
It is quite unnecessary, however, nor do we mean to place our decision upon this ground, since it is enough to say, that the notes thus taken were an unauthorized extension of credit, by which, as between the defendants and the sureties, the original debt was extinguished.
The referee lays stress upon the fact that the original note was not surrendered or cancelled when the other notes were taken; but as stripped of its guarantee, the original note had lost its value, as it was no longer- evidence of a subsisting debt, and no action could then be maintained upon it, either against the makers or guarantors; the fact that the defendants retained its possession is regarded by us as plainly immaterial. In Fellows v. Prentiss, and in Myers v. Welles, the creditor retained possession of the note from which the indorser was held to be discharged. Nor can we attach any importance to the fact that the defendants in their letter to the plaintiff, stating the terms of the arrangement they had made with Bailey & Bros., declared that they retained the note of Mrs. Overacre, doubtless meaning that which she had guaranteed, as a collateral security. It is manifest, that without her consent, they could not thus retain the note, and certainly, for such a purpose, the rights of the plaintiff cannot be affected by their intention to do what the law forbade them to do, namely, by a valid agreement give time to the principal debtors, and yet retain the liability of their surety.
Again, were it possible for us to hold that the notes taken by the defendants from Bailey & Bros., were taken merely as a collateral security, and had not the effect of suspending at all their right of action upon the original note, there is still another ground disclosed by the evidence upon which we should be compelled to say that the defendants had rendered themselves liable' to the plaintiff to the extent of his demand.
It was proved, and proved without objection, that before the commencement of this action, the defendants-had parted with, for value; one of the notes, which, under the arrangement with Bailey & Bros., they had received. From this time, therefore, their right *307 to maintain an action upon the original note, if not wholly gone, was certainly suspended, and from this time, therefore, there was certainly an extension of credit, by which Mrs. Overacre and the plaintiff were discharged. These additional facts, in the opinion of my brother Woodruff, would be conclusive, if standing alone, and in that opinion, I entirely agree; but we do not mean to intimate any doubt as to the sufficiency of the reasons before given, upon which it must be understood that we rest our judgment.
Lastly, I have said, that a negotiable note taken from a debtor for a precedent debt, as between the parties is a conditional payment. In the language of Chief-Justice Spencer, in one of the cases, it is a payment sub modo. Hence, although the creditor of the note is unpaid at its maturity, and may bring an action for the original debt, yet he cannot recover unless upon the trial he produces and -cancels the note, or proves its loss, or destruction. (Holmes v. O'Camp, 1 John 24; Pintara v. Inchington, 10 John 104; Burdick v. Green, 15 John 247.) We cannot believe that the same facts which, as evidence of payment, would have discharged Bailey & Bros., had they been sued by the defendants on their original note, namely, that the notes which they had given for the same debt were outstanding and not cancelled, were just as conclusive to charge the defendants in the present action. If the original note was satisfied in respect to its makers, a fortiori was it satisfied in respect to the plaintiff?
The result is, that in our opinion, the referee drew a wrong conclusion from the facts which he states to have been proved. The true conclusion was, that the defendants, before the action was brought, in judgment of law, had collected the note of Bailey & Bros., which the plaintiff transferred to them, and the plaintiff was therefore entitled to demand and recover from them the surplus, with interest, which, in that event, they had agreed to remit to him.'
We pass to the second question. It is insisted that the agreement of the defendants, as found by the referee, is not that set forth in the complaint, and that the referee was therefore justified in holding that the plaintiff had failed to establish, by proof, the cause of action alleged in this complaint; and was justified, upon this ground, in dismissing the complaint. Although this Objection to a reversal of the judgment appealed from, has created *308 some hesitation in our minds, we are satisfied upon reflection, that it cannot "be allowed to prevail. We aré satisfied that there was no such failure of proof as could justly be considered a bar to the plaintiff’s recovery. It is true, that the agreement found by the referee varies from that set forth in the complaint, but it does not follow that the variance was such as to render a dismissal of the complaint necessary or proper. The promise of the defendants, as set forth in the complaint, was absolute, as found by the referee, conditional; but it must be remembered, that the "condition was shown to have' been fulfilled, and the liability of the de fendants to be exactly the same as if the allegation in the complaint had been literally proved. It may, therefore, well be doubted, whether this variance, as it could not by possibility have misled the defendants, ought not, under section 169, to have been wholly disregarded. It can hardly be said that the cause of action alleged in the complaint was unproved in “ its entire scope and meaning,” and if not, there was no “ failure of proof” within the meaning of the Code. (Code, § 171.)
It is not necessary, however, to place our decision upon this ground, since there is another, upon which, with entire satisfaction to ourselves, it may be placed. The letter of the defendants, stating the terms of the arrangement which they had made with Bailey & Brothers, was read in evidence without objection, and its contents—the facts it proved—were alone sufficient to establish the right of the plaintiff to recover. It was not at all necessary to prove, in addition, that the notes of Bailey & Brothers, taken under the arrangements, had been in fact negotiated or paid; hence, the referee might, with entire safety, have rendered a decision in favor of the plaintiff upon the evidence before him, leaving it to the court, in the exercise of the discretion given by section 173, and in manifest furtherance of justice to sustain a judgment, upon his report, by so amending the complaint as to conform its allegations to the facts as proved, and such, in our opinion, is the, course that the referee ought to have followed, such the decision he ought to have made.
The judgment appealed from must, therefore, be reversed, and there must be a new trial, with costs to abide the event. If the plaintiff so elect, the order for a reference will be vacated.