JAMES K. PLACE, *and* EPHRAIM PLACE *v.* WILLIAM L. McILVAIN *and* ISAAC H. YOUNG, *impleaded with* GEORGE NICHOLS.

Where all that appears is that a creditor, after a note becomes due, takes from the maker a new note, a bill or a check, for the amount of it, payable at a future day, the conclusion must be that the parties have agreed to extend the time of credit upon the original note, until the suppletory instrument becomes payable ; and if such an agreement is founded upon sufficient consideration, it is binding, and the indorsers of the original note are discharged from liability thereon.

The maker of a note, past due, inclosed, in a letter to the holders of it, a check for the amount, dated at a future day, and requested them to keep the check until its maturity, when he would call for the note.    The holders made no reply, but kept the check, and deposited it in bank at maturity, " with the expectation that it would be paid,"—*Held*, that from such a state of facts, it must be concluded that the holders acceded to the request of the maker, and an agreement to give time will be implied as a matter of law.

Place v. McIlvain.

*Held, therefore,* in an action against the indorsers of the note, that a charge to the Jury that it was for them to determine as to the intent which controlled the holders in accepting the maker's check, was erroneous, and that the request of the defendant's counsel to charge the Jury to find for the defendant upon the ground that the taking of the check, although without any express promise to wait, was a suspension of the plaintiff's right to recover on the note, and was a discharge of the indorsers, was improperly refused, and a new trial should be granted.

Where a question stands doubtful upon an uncontroverted state of facts, or where the facts will admit of either of two conclusions, the solution of the question should be left to the jury, and their determination is controlling and final.

Appeal by the defendants McIlvain and Young from a judgment on a verdict rendered on the second trial of the cause.

The plaintiffs sued the defendants on a promissory note made by one Nichols to the order of the defendants, McIlvain and Young, and indorsed by them in blank.

It appeared, on the trial, that at the maturity of the note, the maker sent his negotiable check, dated nine days ahead, to the plaintiffs in a letter, of which the following is a copy :

" Messrs. Place :—I herewith enclose you my check on the Hanover Bank for four hundred and ninety dollars for my note now under protest. Please keep the check, and when paid I will call for the note. I have been disappointed to-day in getting money, and of course quite short. If you will accept this you will confer on me a very great favor; and if you have been put to any expense in consequence of not getting this money at maturity, I will reimburse you. Respectfully yours,
GEORGE NICHOLS."

It appeared that Nichols, at the time the check was drawn, kept an account in the Hanover Bank. Without answering the maker's application, the plaintiffs kept the check until about the time it matured, and then deposited it in bank. One of the plaintiffs testified " we deposited it because we expected it would be paid."

The defendants' counsel requested the Court to direct the jury to find a verdict for the defendants upon the ground that taking the check of Nichols, although without any express promise to wait, was a suspension of the Places' right to recover against him on the note, and was a discharge of the indorsers ;

and upon the ground that plaintiffs could not recover on the note, they not having shown presentment of the .check and notice of non-payment to Nichols. The Court refused to do so, and the defendants' counsel excepted.

The cause having been summed up by the respective counsel, the Court charged the Jury: "That it was the law that if a creditor accepts the note of his debtor for an existing indebtedness, payable at a future day, he thereby extends the time for payment until the maturity of the note, and meanwhile can maintain no action upon it. So, if time be given to the principal for the payment of a debt for which another is liable as surety, if the surety has not consented to the extension, he is by such an act discharged from his liability. Carrying out this rule it has been held, and such is the law, that if the note received from the principal be payable but one day ahead, and the surety is not shown to have assented to the extension, he is thereby discharged. Thus, in the present case, if the plaintiffs accepted the check with the intention of holding it as their own until maturity, that would be such an act as, if done without the consent of the defendants, would operate to discharge them from their liability as indorsers of the note sued upon. But merely retaining the custody of a check, payable at a future day, sent to the holder of a note by the maker, where it is shown either by positive testimony, or by circumstances, that such retention was not intended by either party as an extension of the time of payment, and that both so understood, would not so operate. Such an intention, however, must have been either actual or expressed, or the circumstances attending the receipt of the check must have been such as would fully justify the presumption that both parties so understood the act, before the intent should be regarded as having existed. You are, therefore, to determine as to the intent which controlled the plaintiffs in accepting the check, and if it was received and retained without any intention to give time to the maker, and that until it matured they did not by any act of theirs indicate that they meant to hold it as their own property, the liability of the defendants, as indorsers, was not affected by it, and the plaintiffs must recover. On the other hand, should you conclude from the testimony, and the circumstances disclosed, that no such

Place v. McIlvain.

intention existed or was communicated in any way to the maker, and that they held the check until maturity as their own property, not subject to the control of Nichols, then the defendants will be entitled to your verdict, as this was, in effect, giving time for the payment of the note without their consent. In conclusion, I have but to add, that whether the plaintiffs are to be considered as having accepted and retained the check as their own, may also depend upon whether you believe from the evidence presented that the check was sent by Nichols in good faith, and with the expectation of paying it at maturity. If it was sent without any such expectation or design, and the plaintiffs so understood it, they were not required to go to the trouble of finding Nichols for the purpose of returning the check or declaring to him that they would not accept it on account of the note. And on the contrary, if it were sent and accepted in good faith, and in the expectation that it would be paid when due, the retaining of it by the plaintiffs as their own property, and depositing it in their account for collection, is evidence of their intention to give time to Nichols during the running of the check, and the defendants thereby were discharged from liability."

*Benj. Vaughan Abbott* for appellants.

The Jury rendered a verdict for the plaintiffs, upon which judgment was entered, and the defendants appealed.

Taking the new negotiable check of the maker, operated to suspend the right of action of the holder upon it, and so discharged the indorsers. (*Platt* v. *Stark*, 2 Hilt., 401; *Fellows* v. *Prentiss*, 3 Den., 512, 518; *Putnam* v. *Lewis*, 8 Johns., 389; *Geller* v. *Seixas*, 4 Abbott's Pr., 103; *Bangs* v. *Mosher*, 23 Barb., 478; *Hart* v. *Hudson*, 6 Duer, 304; *Meyers* v. *Wells*, 5 Hill, 463.) The plaintiffs by retaining the check, in silence, and treating it as their own, depositing it to their credit, etc., are clearly chargeable with an acceptance of the check. If there were any ground or pretence that the check was not drawn and sent in good faith, the plaintiffs might perhaps not be bound to return it, or communicate any refusal to accept it. But good faith is clearly shown.

Place v. McIlvain.

*A. R. Lawrence* and *A. H. Wallis* for respondents.

The learned judge before whom the cause was tried properly refused to direct the jury to find a verdict for the appellants, as requested by their counsel. (1) If the appellants are right in their position that, " taking the check of Nichols, although without any express promise to wait, was a suspension of the Places' right to recover against him on the note, and was a discharge of the indorsers," there was no question for the jury to pass upon, and a direction that they should find a verdict in any way would have been error. The appellants' motion should have been *for a dismissal of the complaint.* (2) Again, if they are right in that position, it could make no difference whether the check had been presented for payment or notice of non-payment had been given to Nichols. (3) On the other hand, if the taking of the check did not amount to an agreement to give time, the question whether the appellants were liable upon the note, could not be affected by the disposition which had been made of the check.

By the Court.—Daly, F. J.—After the note in suit had matured and was under protest, Nichols, the maker, sent a check to the plaintiffs dated ten days ahead. The plaintiffs kept the check until about the time of its maturity, when they deposited it in their bank, expecting, as one of them testified, that it would be paid. As to these facts there is no conflict, the conflict being upon the question, whether there was or was not an express promise to give time. Admitting, in consonance with the finding of the jury, that there was no express agreement, still the question remains, whether the acceptance of the check and the retaining of it until maturity, the depositing it in bank, with the expectation that it would be paid, were not acts sufficient on the part of the plaintiffs to show that there was an implied agreement to wait for payment until the maturity of the check, and if there was, then the indorsers of the note were discharged. It is a general rule, that if the creditor takes a bill or note for the amount of his debt, payable at a future day, it suspends the remedy on the original debt until the note or bill falls due. (*Stedman* v. *Torch*, 1 Esp., R., 5 ; *Putnam* v. *Lewis*, 8 Johns., 389 ; *Fellows* v. *Prentiss*, 3 Den., 513 ; *Geller* v. *Seixas*, 4 Abbott 104 ; *Hart* v. *Hudson*, 6 Duer,

Place v. McIlvain.

305; *Platt* v. *Stark*, 2 Hilton, 399.) And the acceptance of a check dated at a future day, and which consequently is not payable until that day arrives, must be regarded as having the same effect.

In *Bangs* v. *Mosher*, 23 Barb. 478, a collector of moneys, who had given a bond with sureties for the faithful performance of his duties, accounted with the obligees for certain moneys he had collected, and they took his check for the amount, payable at a future day. It was held that the sureties were discharged, the only difference between the check in that case and in this being that here it was dated as of a future day, while there it was expressly made payable at a future day, a distinction which is not material, at least in this country, in respect to its character as a negotiable instrument. If it had been shown that the check in the case had been taken merely as collateral, (*Taylor* v. *Allen*, 36 Barb. 298,) or if there had been any evidence warranting the conclusion that it was not the intention of the parties that it should operate to extend the time of payment upon the original debt, it would, of course, not have that effect; but where all that appears is that a creditor, after a note becomes due, takes from the maker a new note, a bill or a check, for the amount of it, payable at a future day, the conclusion must be that the parties have agreed to extend the time of credit upon the original note until the suppletory instrument becomes payable, and if such an agreement is founded upon a sufficient consideration, it is binding. A very slight consideration will suffice. If a note is given upon an account, or for goods sold, the demand is thereby liquidated, which is a benefit to the creditor, or if after a note is due, a new note, a bill or a check for the amount of the debt is taken from the maker payable at a future day, the creditor acquires a negotiable instrument, which may be used more beneficially than a note which is past due, and these advantages constitute a sufficient consideration to support such an agreement. *Meyers* v. *Wells*, 5 Hill, 464.

In this case, the check was sent to the plaintiffs enclosed in a letter, and the question whether there was or was not an implied agreement to give time depends upon what was communicated in the letter, and what the plaintiffs did after they received it. Nichols states in the letter that he encloses the check for the amount of the note which he refers to as then under protest.

He requests them to *keep* the check and says that *when it is paid*, he will call for the note. After this statement he continues: "If you will *accept this*, you will confer upon me a *very great favor*," closing with the suggestion, that if they had been put to any expense in consequence of their not getting the money at maturity, he would reimburse them. It is very plain what is meant by the "great favor" here referred to. It is manifestly delay—the postponement of payment for the ten days which the check had to run. It is capable of no other interpretation. Advised then by this note of what Nichols requested, what did the plaintiffs do? By their own showing, they kept the check, and immediately before it matured, deposited it in their bank for collection, expecting, as one of them testified, that it would be paid. There is no pretence on their part, and both of them were examined as witnesses, that any intimation was given to Nichols that his request would not be complied with, nor was anything further done by them, except to ask the advice of their lawyer, the nature of which was not disclosed, as it was objected to, and ruled out. The conclusion from this uncontroverted state of facts, in my judgment, must be that they acceded to the request made to them; by their silence after the receipt of the letter, and by depositing the check in their bank for collection, they meant to and did give Nichols the additional time asked for in the payment of the debt. From such a state of facts, an implied agreement to give time is to be inferred as matter of law. The Judge charged the jury that merely retaining the custody of a check payable at a future day, sent to the holder of a note by the maker, where it is shown, either by positive testimony or by circumstances, that such retention was not intended by either party as an extension of the time of payment, and that both so understood it, would not so operate; but that such an intention, however, must have been either *actual* or *expressed*, or the circumstances attending the receipt of the check must have been such as would fully justify the presumption that both parties so understood the act, before the intent would be regarded as having existed, and he left it to the jury to determine as to the intent which controlled the plaintiff in accepting the check, and told them that if it was retained without any intention to give time to the maker, and that until it matured

Place v. McIlvain.

they did not by any act of theirs indicate that they meant to hold it as their own property, the liability of the defendants as indorsers was not affected by it, and the plaintiffs must recover. Where a question stands doubtful upon an uncontroverted state of facts, or where, as sometimes happens, the facts will admit of either of two conclusions, the proper course is to leave the solution of the question to the jury, and their determination is controlling and final. But such was not the case here. The plaintiffs retained the check, and there was nothing on their part to show an intention that the retaining of it was not to have the effect of extending the time of payment until the check became due, nor any circumstances attending the retention of it that would warrant any such presumption, and if there was not, then there was nothing for the jury to pass upon; but the question upon the facts proved was a question of law. James K. Place testified that he never made any agreement or arrangement with Nichols in respect to the check, and that when it was received he called upon his counsel to take their advice upon the subject; but this does not affect the legal conclusion that follows from the nature of the request contained in the letter, from the plaintiffs' retaining the check and depositing it in their bank for collection.

On a trial, and especially in a case like this, where there was a conflict of evidence as to whether there was or was not an express agreement, it is always safer to leave the question to the jury under proper instructions as to the law, which the Judge did; but the difficulty in this case is that the defendants requested the Judge to charge the jury to find a verdict for the defendants upon the ground that the taking of the check of Nichols, although without any *express* promise to wait, was a suspension of the plaintiff's right to recover against him on the note, and was a discharge of the endorsers, which upon the facts of the case, I think they were entitled to, and which the Judge refused. A new trial in my judgment should be granted.