## N. Y. COMMON PLEAS.

JOSEPH MAIER, plaintiff and appellant, agt. JOHN CANAVAN, impleaded, &c., defendant and respondent.

*Principal and surety — the latter how discharged — Effect of receiving a bill or note for an open account.*

The notice from a surety, requiring a creditor to sue the principal debtor, must be clear and unambiguous, and a request, by the surety, to the creditor, "to go and get his money," is not a direction to sue the princ

Where all that appears is, that a creditor, after a note becomes due, takes from the maker a new note payable at a future day, the conclusion must be that the parties have agreed to extend the time of credit until the new note matures, and taking a note for an open account is a good consideration for such an extension of credit (*See Dodd and Moss* agt. *Dreyfus, ante,* 319).

*General Term, March,* 1879.

THE plaintiff sued the defendants, Moran and Canavan, in the New York marine court upon an open account for goods sold and delivered. Moran made default, and Canavan defended

Maier agt. Canavan.

upon the ground that his firm had dissolved, and that by the terms of the articles of dissolution, his partner, Moran, had agreed to pay all of the firm's debts. That the plaintiff had been informed of the dissolution and its terms, and had been told "to go to Moran and get his money." That after such agreement and notice, Canavan became in law a mere surety for his former partner, and that in consequence of the plaintiff forbearing to sue Moran, he, Canavan, was discharged from all liability.

Mr. justice McAdam, before whom the case was tried, held that no sufficient notice to sue was given to the plaintiff (*citing* 49 *Barb.*, 182) ; that there was not sufficient proof of Moran's insolvency to bring the case within the rule enunciated in *Colgrove* agt. *Tallman* (67 *N. Y.*, 95), and that the mere acceptance of new notes from Moran, did not discharge Canavan, the surety, because the acceptance did him no injury ; that the forbearance which discharges a surety must be under some agreement, founded upon a new consideration, whereby the creditor disables himself from suing the principal debtor (*citing Burge on Suretyship*, 1*st Amer. ed.*, 204, 205), and that the bare acceptance of the notes upon the joint precedent debt, did not disable the plaintiff from suing, because he was at liberty to return the notes to Moran and sue upon the joint account at once, there being no consideration for any forbearance.

The trial justice thereupon directed a verdict for the plaintiffs for $986.10, and the defendant, Canavan, appealed.

The marine court, general term, Shea and Sinnott, JJ., reversed the judgment, holding that the notice to sue was sufficient, and that under the rule declared in *Colgrove* agt. *Tallman* (*supra*), the defendant, Canavan, was discharged.

The plaintiff thereupon appealed to the New York common pleas, general term.

*Kurzman & Yeaman*, for the plaintiff and appellant.

*E. H. Pomeroy*, for defendant and respondent.

VAN HOESEN, *J.*— The defendant utterly failed to bring his case within the rule under which a surety is relieved by the neglect of the creditor to prosecute the collection of his demand against the principal debtor. There was no legal evidence that the principal debtor was solvent when the surety requested the creditor to sue, and that he was insolvent afterwards. The case in the court below seemed to turn upon a supposititious case of affairs, rather than upon the case made by the evidence. In *Huffman* agt. *Hurlburt* (13 *Wend.*, 377), it was decided that in order to release the surety, it must appear that the debt was collectible by due course of law, *out of the property* of the principal, and not merely that, if hard pressed, the principal might have paid, had he chosen to do so. In *Herring* agt. *Borst* (4 *Hill*, 650), it was said that the mere probable solvency of the principal in reference to the debt in question, at the time of the notice to prosecute, would not suffice to release the surety. The defense is not to be encouraged (4 *Hill*, 456). Now, in this case, the defendant, upon whom the burden devolved of showing the solvency of Moran, the principal debtor, at the time of the request to prosecute, refrained from any attempt to prove what Moran's pecuniary condition was at that time. He went no further than to say, that he told Maier that there was money enough to pay him. It is strange that he omitted to make any reference to the all-important subject of Moran's pecuniary condition at the time of the dissolution of firm. Had Moran any property subject to execution at that time? Was he able to pay his debts as they fell due? Were there past due-claims against him, which he had not paid? Was he not just as solvent at the time of the trial before judge McADAM as he was at the time Canavan told Maier to go and get his money? These are matters about which the defendant's counsel did not ask any questions, nor ask any proof. It will be seen that there was no evidence at all that Moran was solvent when Canavan informed Maier of the dissolution.

But there was very slight evidence, if, indeed, there was

any, that Moran subsequently became insolvent. Canavan swore that he did not know whether Moran was insolvent or not; he had recovered a judgment against Moran, but it did not appear that any execution was ever issued, and it may be that proceedings had been stayed by appeal, or by an order of the court. Insolvency is not to be shown by such testimony as that. Upon exactly the same evidence, men of great wealth in unincumbered land in this city could be proved insolvent. It was further proved that the claim in suit had not been paid, but that fact would not establish the defense; it was necessary to show that other just claims, which were past due, had not been paid.

I think, moreover, that judge McADAM properly decided that the words, " Go and get your money, there is enough to pay you," did not amount to a notice that Canavan required Maier to sue Moran. The notice must be clear and unambiguous, and not one likely to be misapprehended by the creditor. It must apprise him that a resort to legal process is required of him by the surety. A collection of cases upon the subject may be found in volume 3, *Wait's Law of Actions and Defenses* (*pages* 235 *and* 236). Thus it has been held, that is to say : " I hope the note may be put in train for collection " is not enough, nor is a notice saying : " I wish you to collect the debt from the principal," sufficient. In our own state it has been decided that a request to " push and keep pushing " the principal did not impart a request to bring an action against him (*Singer* agt. *Trautman*, 49 *Barb.*, 182); of course, the words, " go and get your money," could not have conveyed to Maier's mind the idea that he was required to sue Moran without delay. The surety is bound to make his meaning understood by using words that to a man of comman understanding convey a request to sue. The defense failed in this respect.

It is said, however, that Maier accepted notes payable at a future day, and thus suspended his right of action against Moran. If the right of action was suspended against Moran

for an hour, Canavan is released. The law of New York is not settled as to whether the taking of a note payable at a future day, operates as a suspension of a right to sue on the original cause of action. In the court of appeals, as in the supreme court, there is no difficulty in finding decisions to sustain any view of the law that a suitor may wish to see prevail. *Pait* agt. *Coman* ( 37 *N. Y.*) and *Place* agt. *McIlvain* ( 38 *N. Y.*), hold that accepting a note payable in future, suspends the right of action on the original debt. *Cary* agt. *White* (52 *N. Y.*) holds that it does not. In *Hubbard* agt. *Gunney* (64 *N. Y.*, 467) the chief judge says that there must be an agreement, either express or implied, that the original debt shall not be sued upon until the note matures, in order to effect such a suspension of the right to sue as will discharge a surety. The difficulty is, to determine from what circumstance such an agreement will be implied. In *Hart* agt. *Hudson* ( 6 *Duer*, 304), DUER, J., said: " Taking a note payable at a future day, was proof conclusive of an agreement to extend credit, and would discharge the surety." In *Elwood* agt. *Deifendorf* (5 *Barb.*, 409), PAIGE, J., said, that taking from the principal debtor for an old debt past due, a new note payable at a future day, without an agreement to extend the time of payment, does not discharge the surety. It is somewhat singular that judges DUER and PAIGE agree in this, that the law is perfectly well settled. There was nothing proved in this case on the subject of the notes, except that Moran gave them after the dissolution. Are we to adopt the views of judge DUER and the views of judge GROVER, in *Place* agt. *McIlvain*, or the views of judge PAIGE and of judge ALLEN, in *Cary* agt. *White*? My own notion is, that we should adhere to the views which this court announced when the case of *Place* agt. *McIlvain* was before it in 1863. The decision is reported in 1 *Daly*, 266. I am prepared to adopt the language of chief justice DALY: " Where all that appears is, that a creditor, after a note becomes due, takes from the maker a new note payable at a future day, the conclusion must be that the parties

have agreed to extend the time of credit until the suppletory instrument becomes payable, and if such an agreement is founded upon a sufficient consideration, it is binding. Giving a note for an open account is a good consideration for an extension." It may appear, however, either by direct testimony, or from the circumstances, that the new note was taken by the creditor, with the understanding that it was only collateral security and that he might, at pleasure, sue upon the original debt. If this does not appear from the evidence of the defendant, it devolves upon the creditor to prove it, and if he fails to do so, the inference will be that the right of action on the old debt was suspended. Such being then my opinion of the law the question is, did the notes which Moran gave to the plaintiff suspend his right to enforce the payment of the claim? The notes were for portions of the entire demand which Moran and Canavan owed the Maiers; they have been paid and are out of the way. If there were any thing in the evidence to make it doubtful whether or not an agreement existed for an extension of the time for the payment of such parts of the debt as were represented by the note, it would have been for the jury to determine as to its existence or non-existence, but the testimony of the plaintiff and his brother showed that they retained the notes credited them in the account and struck a balance after deducting them. In the absence of opposing testimony, it was, I think, for the court to say that the notes suspended the right to sue the defendant, Moran, for so much of the demand as was embraced in the notes. If this be so, the defendant was discharged, because Maier, whilst the notes were maturing could not have conveyed to Canavan an immediate right to prosecute Moran. Canavan, if he applied to Maier for a transfer of the latter claim against Moran, could only have obtained what Maier had — a right to sue Moran when the notes arrived at maturity. As to the residue of the claim, of course, Maier might have given an immediate right to prosecute it, Canavan could not have been called to accept such

an assignment, and he is, therefore, discharged (*Ducker* agt. *Rapp*, 67 *N. Y.*, 472 ; *Croyden Gas Co.* agt. *Dickinson*, 4 *Weekly Digest*, 381).

There was but one contract, and that without any provision for the payment by installments, and the suspension of the right to sue immediately for any part of the money, destroyed the claim against the surety.

The judgment and order appealed from should be affirmed, with costs, and judgment absolute rendered for the defendant.