TAYLOR *vs.* ALLEN.

The receipt of a bill or note having time to run, from the party primarily liable on a bill or note then overdue, does not operate to discharge an indorser on the bill or note so overdue, unless there is an agreement express or implied that the new bill or draft shall be in payment of the former, or extending the time of payment in favor of some party who is liable thereon, prior to such indorser.

If a new draft is taken, by the holder of a protested note, as collateral to such note, this will not prevent him from enforcing payment of the note.

Taylor *v.* Allen.

And if there is some evidence that a draft was thus taken, the question should be submitted to the jury whether there was an agreement to extend the time of payment on the protested note, or whether the new was given and received as collateral to the old security.

THIS action was commenced against the defendant as indorser of a promissory note for $2060, made by Parmelee & Watts, of Des Moines, Iowa, dated November 11, 1857, payable four months after date, to the order of the defendant, and indorsed by him. The answer avers that the plaintiff, by agreement with the makers of the note, without the consent of the defendant, extended the time of payment of the note in suit, by taking a new acceptance of the makers for the amount of the old note, interest and charges, dated June 15, 1858, payable sixty days after date. The issue thus joined was tried before Mr. Justice SUTHERLAND and a jury, October 18, 1859. The facts appearing on the trial are as follows : Parmelee & Watts, who reside at Des Moines, Iowa, had large business transactions with the plaintiff, and were indebted to him. The defendant was a banker at Des Moines, and Parmelee & Watts kept their current bank account at his bank. George T. Jenkins, who had acted as agent for the plaintiff, proposed to Parmelee & Watts to get a loan for them of $3000 on their note, indorsed by the defendant, and accordingly drew a note for $3000, dated June 1st, 1857, payable six months after date, to the order of the defendant, which Parmelee & Watts signed. This note of June 1, 1857, was brought to the defendant by Jenkins "ready signed by Parmelee & Watts," with the defendant's name as payee ; the defendant at first declined to indorse it ; but finally, at the urgent request of Jenkins, indorsed it. The note was negotiated at Baltimore, by the plaintiff, or through him, at a heavy discount, the proceeds being only $2800. These proceeds were remitted to the defendant by Jenkins, and deposited by the defendant to the credit of the makers of the note in their bank account with him. Early in November, 1857, nearly a month before this $3000 note

matured, Jenkins urged the defendant to make an arrangement to provide for the payment of it; the defendant at first declined, but finally, on Jenkins undertaking to get McGavie, Chittenden & Co., who were also indorsers, to pay $500 in cash on account, he consented to pay $500, and indorse a new note of Parmelee & Watts for the balance. Jenkins then got Parmelee & Watts to sign a new note, dated November 11, 1857, for $2060, and interest at 10 per cent, payable four months after date, to the order of the defendant. The last mentioned note for $2060, dated November 11, 1857, is the note in suit. It was indorsed by the defendant and delivered to the plaintiff. It did not appear whether the $3000 note was given up or not. The note for 2060 matured March 11th–14th, 1858. On the 15th April, the plaintiff, being the holder of this note, having paid and taken up the same at the Union Bank of Baltimore, where it had been discounted, made out an account against Parmelee & Watts, charging them with the principal of the note, $2060, and interest to date of maturity at 10 per cent, protest fees and other charges, making a total of $2137.90. He then added for three months' additional interest at 6 per cent, and 2 per cent additional, making a total of $2217.53, and drew his draft on Parmelee & Watts in these words:

"$2217 $\frac{53}{100}$　　　　　　　　*Baltimore, April 15th,* 1858.

Sixty days after date, pay to the order of Taylor & Gardner twenty-two hundred and seventeen $\frac{53}{100}$ dollars, with exchange on Baltimore, value received, *acceptance waived.*

　　　　　　　　　　　　　　　　HENRY S. TAYLOR.

To Messrs. Parmlee & Watts,

　　　　　　　　Des Moines, Iowa."

He sent this draft to the drawees in a letter of the same date, in which he says: "We have to-day *succeeded in negotiating a draft on you for* $2217.53, *which please accept.* We wish some arrangement made by which the money will be ready to meet this draft at maturity, and hoping to hear

Taylor *v.* Allen.

soon in reference to it, I remain, &c." This draft was accepted by Parmelee & Watts after the commencement of this suit. The plaintiff did not communicate with the defendant in reference to this draft, nor request him to consent to its acceptance. The defendant never did consent to it. The draft was shown to him by Parmelee, and the defendant refused to consent to the acceptances, or to do any thing further. The old note for $2060 was retained by the plaintiff, and after the negotiation by him of the draft on Parmelee & Watts, and on the same day, this action was commenced against the defendant alone, as indorser.

At the close of the evidence, the court decided and held that the case presented no question of fact for the jury, and, although requested by the plaintiff's counsel so to do, refused to submit any question of fact to the jury. To which decision and refusal the counsel for the plaintiff excepted; and the court directed the jury to find a verdict in favor of the defendant. To which direction the counsel for the plaintiff also excepted; and thereupon the jury, by direction of the court, found a verdict for the defendant, and the plaintiff appealed from the judgment.

*Mott, Murray & Harris,* for the appellant.

*Wm. A. Butler,* for the respondent.

*By the Court,* LEONARD, J. The receipt of a bill or note having time to run, from the party primarily liable on a bill or note then overdue, does not operate to discharge an indorser on the bill or note so overdue, unless there is an agreement express or implied that the new bill or draft is in payment of the former, or extending the time of payment in favor of some party who is liable thereon prior to such indorser.

Where it has been expressly agreed that the new note was received as collateral security to the note overdue, the right

of immediate action on the note so overdue is not suspended, and the indorser or surety is not discharged. (*Myers* v. *Welles*, 5 *Hill*, 463. *Fellows* v. *Prentiss*, 3 *Denio*, 512. *Hart* v. *Hudson*, 6 *Duer*, 294. *Huffman* v. *Hulbert*, 13 *Wend*. 375. *McLean* v. *Lafayette Bank*, 3 *McLean*, 589.)

In the present case there was no express agreement to extend the time of payment on the note overdue.

There is some evidence that the new draft was taken by the plaintiff as collateral to the former note. If this was so, there was nothing to prevent the plaintiff from enforcing payment of the protested note. The question should have been submitted to the jury whether there was an agreement to extend the time of payment on the protested note, or whether the new was given and received as collateral to the old security.

There must be a new trial, with costs to abide the event.

