Dorlon v. Christie.

---

DORLON, adm'x, &c. *vs.* CHRISTIE.

D. being the holder of a promissory note for $600, made by S. and indorsed by C., which was overdue, and had been protested for non-payment, and C. duly charged as indorser; H. as agent of S. brought to D. from S. an accepted draft for $500, on a third party, which had some forty days to run before maturity ; also a new note of S., not yet due, for $165,50, being the balance remaining due on the old note, after deducting the amount of the draft. H. indorsed over the draft and the new note to D., who received the same, agreeing that he would not receive them in payment upon the original note, but would hold them until the maturity of the new note and

Dorlon *v.* Christie.

draft, and then enforce the old note if they were not paid. *Held* that there was a valid and binding agreement to extend the time of payment of the original note ; and that such extension of the time discharged the indorser. *Held*, also, that whatever might have been the intention of the parties as to taking the new note and draft as collateral, yet if the time of payment was actually extended until the maturity of the new note, then the indorser was discharged.

APPEAL from a judgment entered at a special term on a decision of the court, upon a trial at the circuit without a jury. The case was tried at the Rensselaer county circuit before justice PECKHAM. The action was on a note dated Troy, January 7, 1855, executed by one L. R. Sargent, and payable to the order of Robert Christie, jun. the defendant; by him indorsed to Mrs. G. V. Huddleston, by her to E. Dorlon, and by him to the plaintiff, administratrix of Robert Dorlon, deceased, by which Sargent, three months after date, promised to pay six hundred dollars, with interest, at the Farmers' Bank of Troy. While in the hands of Dorlon, and overdue, (it having been duly protested and sufficient notice given to charge the defendant Christie,) one W. D. Huddleston, *without authority from Dorlon, but at Sargent's request,* brought Dorlon from Sargent a draft on a third party, which had some forty days to run to mature, for $500, accepted by the drawee, and which was received and credited by Dorlon as a payment on the note, and also a new note of Sargent not indorsed, otherwise than by Huddleston, acting as Sargent's agent, for $165,50, being the amount due on the note in suit, dated May 19, 1856, payable in thirty days, which Huddleston offered Dorlon in settlement of the note in suit. The draft and note were then indorsed over to Dorlon. This was nothing more than the note of Sargent, payable to his own order, and indorsed by him, and the court found the fact to be that such note was not indorsed. When Huddleston offered the $500 draft, and note of Sargent in settlement of the note in suit, Dorlon *took the draft and note, telling Huddleston at the time that he would not receive them in payment upon the old note, indorsed by the*

*defendant, but would hold them until maturity of the new note and draft, and enforce the old note if the new note and draft were not paid.* Dorlon did not at the time know that the defendant was an accommodation indorser. The new note and draft were sent by Sargent through Huddleston to Dorlon *to take up the old note.*

The court held that this transaction extended to the maker the time of payment of the original note, and the indorser was, thereby, discharged. To which decision the plaintiff excepted. Judgment being rendered for the defendant, on this decision, the plaintiff appealed to the general term.

*George Van Santvoord,* for the appellant and plaintiff.

*R. Christie, Jr.* for the respondent and defendant.

*By the Court,* MILLER, J. When the draft and note were delivered to Dorlon on settlement of the note in suit, it was agreed that he would not receive them in payment of the old note, indorsed by the defendant, but that he would take them and hold them until the maturity of the draft and note, and would then enforce the old note if they were not paid. Upon the foregoing facts two questions arise.

*First.* Were the note and draft received in payment of the old note, or merely as collateral to it ?

*Second.* Was the time of payment extended upon the old note by a valid and binding agreement entered into for a good consideration, and which could be enforced ?

I. Whatever may be the legal effect of the agreement with Dorlon, I think the evidence clearly establishes that he did not intend to receive the new note and the draft in payment of the old note, but merely as collateral security to it. He expressly refused to receive them in payment, and stipulated to hold them until maturity, and if they were not then paid to enforce the note in suit. Taking new security from the

principal does not discharge the surety, unless time is given. Nor will he be discharged if the contract reserves all the rights of the creditor against the surety; for in that case the surety may pay immediately and forthwith proceed against the principal. (*Wagman* v. *Hoag*, 14 *Barb.* 232, *and authorities there cited. Gahn* v. *Niemcewicz*, 11 *Wend.* 312.)

In *Taylor* v. *Allen*, (36 *Barb.* 294,) it was held that the receipt of a new bill or note having time to run, from the party primarily liable, did not operate to discharge the indorser on a bill or note overdue, unless there was an agreement express or implied that the new bill or note should be in payment of the former, *or extending* the time of payment in favor of some party who was liable thereon prior to such indorser. If the new note or draft is taken as collateral to the old note, the right to an immediate action is not suspended, and the indorser or surety is not discharged. (*See also Myers* v. *Welles*, 5 *Hill*, 463 ; *Fellows* v. *Prentiss*, 3 *Denio*, 512 ; *Hart* v. *Hudson*, 6 *Duer*, 294 ; *Huffman* v. *Hulbert*, 13 *Wendell*, 375 ; *Bailey and Remsen* v. *Baldwin*, 7 *id.* 289.)

Dorlon doubtless intended not to surrender his claim upon the defendant as indorser of the old note, and he had a perfect right to do what he did, under the authorities cited; provided he did not extend the time of payment, and thus affect the rights of indorsers.

II. The question whether the time of payment was extended upon the old note by a binding and valid agreement for a good consideration, is one of more difficulty. And whatever may have been the intention of the parties as to taking the new draft and note as collateral, yet if the time of payment was actually extended until the new note became due, then the indorser was discharged. (*See cases above cited; also, Miller* v. *McCan*, 7 *Paige*, 451 ; *Putnam* v. *Lewis*, 8 *John.* 389.) Mere indulgence by a creditor without a valid and express agreement to extend the time of payment of a bill or note, will not exonerate the surety or indorser.

(*Reynolds* v. *Ward*, 5 *Wend*. 501. *Bank of Utica* v. *Ives*, 17 *id* 501. *Draper* v. *Romeyn*, 18 *Barb*. 166.) The surety is discharged, however, in all cases where without his assent the time of payment by an agreement binding on the creditor was extended to the debtor. (*Hart* v. *Hudson*, 6 *Duer*, 294, *and authorities there cited*.)

The taking of a new note or bill from the debtor, payable at a future day, suspends until then the creditor's right of action for the original debt, and operates in all cases as an extension of credit, by which not merely an ordinary surety but an indorser not assenting to the transaction is discharged. (*Id.* See *also Elwood* v. *Deifendorf*, 5 *Barb*. 398 ; *Hubbell* v. *Carpenter*, *Id*. 520.)

The consideration of the agreement to extend the time, if any such was made, was a draft for five hundred dollars duly accepted, and which was afterward paid at maturity, and a note for the balance. Dorlon received the benefit of the security, and Sargent actually paid the amount of the draft. Sargent was liable on the note for the balance. I think there was a consideration of benefit on the one side and harm on the other, and sufficient to sustain the agreement. (*See* 11 *Wend*. 318 ; 3 *Denio*, 512 ; 5 *Hill*, 463 ; 6 *Duer*, 294.)

The consideration being sufficient it remains to be considered whether the agreement was of such a character as to extend the time of payment. If Dorlon was not prevented from prosecuting the old note, and the defendant prevented from compelling him to prosecute, then the time of the payment of the note was extended. (11 *Wend*. 312. 5 *Barb*. 20. 14 *id*. 239.) Even if there was sufficient evidence upon the question of fact to submit the case, then this court cannot interfere. The defense in a suit upon the old note prior to the time when the draft and new note became due, would be that the time of payment was extended. The proof would show an agreement not to receive the draft and new note in payment, but to take and hold them until maturity, and enforce the old note, if the draft and new note were

Dorlon *v.* Christie.

not then paid. The agreement not to enforce the old note was virtually an extension of the time of payment until the period referred to. It was saying, " I will take the new securities ; hold them, and wait upon the drawer until they become due, and if not then paid, I will prosecute the old note." The absence of a stipulation providing that the arrangement should not prejudice the holder's claim against the drawer and indorser, nor prevent a suit if ordered by the indorser, is a very strong circumstance to show that Dorlon meant to waive his right in this respect, if it is not conclusive. It must be regarded somewhat as determining the character and import of the agreement, as omissions are often controlling in construing contracts. Perhaps it is not very important in this case, as there was an agreement to delay ; an express provision to enforce the old note at the expiration of the time when the draft and new note became due. I think this was an extension of the time, and is conclusive. It certainly presents some evidence upon that subject, and the justice who tried the cause having arrived at the conclusion that Dorlon extended the time of payment, his decision should not be set aside.

I am therefore of the opinion that a new trial should be denied, and the judgment affirmed.

[ALBANY GENERAL TERM, December 1, 1862. *Hogeboom, Peckham* and *Miller,* Justices.]