JAMES K. PLACE *et al.*, Appellants, *v.* WILLIAM S. McILVAIN, *et al.*, Respondents.

DISCHARGE OF INDORSERS FROM LIABILITY. The defendants were indorsers on a note given by one Nichols to plaintiffs, which had been protested for non-payment. Subsequently, Nichols inclosed to plaintiffs his check, dated ahead, with a letter requesting them to hold same, and, when paid, he would call for the note. The plaintiffs, without communicating with Nichols, kept the check, which was not paid at maturity. In an action against the defendants as indorsers, their defense was a discharge from liability by reason of an extension of time given to the maker of the note.

*Held,* that the letter, by fair construction, contained a request to give time for payment of the note until the maturity of the check, and that, by retaining the check until it matured, and then presenting it for payment, the plaintiffs assented to the request.

The plaintiffs were not at liberty to retain the check, without notice to the maker, for some other purpose than that implied in the request, and of which he had no knowledge, and to which he never assented. They were bound, upon receipt of the check, to retain it upon the terms proposed, or to return it to the maker, rejecting the terms.

When a creditor takes the note of his debtor, payable at a future day, he thereby suspends his right of action upon the debt until the maturity of the note (see cases cited in opinion of GROVER, J.), and, taking the check of the debtor, so payable, is the same in principle, and should be held to produce a like effect.

Extending the time of payment to the principal debtor, or, what is equivalent, suspending the right of action by the creditor, discharges the surety.

The plaintiffs having suspended the right to sue the maker upon the note until the maturity of the check, the indorsers were thereby discharged, and the judge, at the trial, erred in not directing a verdict in their favor, as requested.

N. B. — The general propositions in the opinion of GROVER, J., are not contradicted in the dissenting opinion of MILLER, J. The dissent relates to the ulterior question, whether the plaintiffs, by keeping the check as requested, and presenting it for payment at maturity, did thereby extend the time of payment of the note, or suspend their right of action upon it. The affirmative opinion would seem to hold, that this was a question of law which the judge could determine; the dissenting opinion, that it was a question of fact to be submitted to the jury.

THIS action was brought in the New York Common Pleas against the respondents, as indorsers on a promissory note drawn by one Nichols; and their defense was, that they were

discharged from liability, by an extension of time given Nichols by the appellants.

The cause was first tried, December 23d, 1857, before Judge INGRAHAM, without a jury, on an agreed state of facts. He rendered judgment for the amount with interest, in favor of the plaintiffs, which judgment was reversed on appeal, and a new trial ordered.

On the second trial before Judge HILTON and a jury, February 15, 1860, the respondents' counsel produced in evidence the agreed state of facts drawn up and submitted on the first trial, by the counsel for the respective parties, and on which judgment had been rendered in favor of the plaintiffs. All technical objections as to the authenticity of the evidence being waived, the judge permitted the plaintiffs to introduce evidence varying this statement of facts, to which exception was taken.

The evidence showed on the second trial, that, at the maturity of the note, the maker sent to the plaintiffs, inclosed in a letter, his negotiable check, dated nine days ahead, in which he says: "Please keep the check, and when paid I will call for the note." He also stated, "if you will accept this, you will confer on me a great favor." The plaintiffs received both the letter and check, and deposited the check in their own bank; and they did this, because they supposed it might be paid. The check was not paid at maturity; no notice of its non-payment was ever given by them to its maker.

Upon these facts, the respondents' counsel requested the court to direct a verdict in their favor, which was refused, and exception taken, and the cause was submitted to the jury, the judge leaving it for them to determine, as to the intent which controlled the plaintiffs in accepting the check; and they rendered a verdict in favor of the plaintiffs, to the amount of the note and interest.

A motion for a new trial at Special Term on exceptions, and also, on the ground that the verdict was against evidence, was made by the respondents, and denied. They then appealed to the General Term, from the judgment entered

on the verdict, and the judgment was reversed, and a new trial ordered. The plaintiffs then appealed to this court, with the usual stipulation as to judgment absolute in case of affirmance.

*Messrs. A. H. Wallis & A. B. Lawrence*, for the appellants.

*Mr. E. T. Gerry*, for the respondents.

GROVER, J. The principal question in this case arises upon the exception of the defendants to the refusal of the judge to direct a verdict for the defendants. The undisputed facts, upon which the request was based, were, that after the defendants were duly charged as indorsers upon the note in suit, the maker sent his check upon the Hanover bank for the amount of the note, payable to plaintiffs' order, post-dated some seven days, inclosed in a letter as follows : " I herewith inclose you my check on the Hanover bank for $490, for my note now under protest. Please keep the check, and when paid, I will call for the note. I have been disappointed to-day in getting the money, and of course quite short. If you will accept this, you will confer on me a very great favor, and if you have been put to any expense in consequence of not getting this money at maturity, I will re-imburse you." That the plaintiffs received the check on the day of its date, and retained it until maturity, and then presented it for payment, which was refused ; that, until after this, no communication was made by the plaintiffs to the maker in regard to the check or note, and no notice given to the latter, of acceptance or rejection of the proposition contained in the letter inclosing the check. The verdict of the jury, under the charge given, finds, that there was no express agreement by the plaintiffs to give time to the maker, and no intention on their part to retain the check as their own property until maturity ; but there was no evidence to sustain such findings, except as above stated. The letter, fairly construed, contains a request by the maker, to retain the check, and give time for the pay-

ment of the note until maturity; retaining the check until maturity, by the plaintiffs, and then presenting it for collection, shows that they assented to such request. They were not at liberty, so to retain it, without notice to the maker, without such assent, and, after having done so, it is not competent for them to allege that they retained it for some other purpose, of which the maker had no knowledge, and to which he never assented. The plaintiffs were bound, upon the receipt of the letter and check, to elect either to retain it upon the terms proposed, or to reject such terms, and return the check to the maker. Having retained the check, they must be regarded as assenting to the terms upon which it was sent by the maker. When a creditor takes the note of his debtor, payable at a future day, he thereby suspends his right of action upon the debt, until the maturity of such note. (*Putnam* v. *Lewis*, 8 Johns. 382; *Myers* v. *Willey*, 5 Hill, 463; *Fellows* v. *Prentiss*, 3 Denio, 518.) Taking the draft or check of the debtor so payable, is the same in principle, and should be held to produce the like effect. This was so held in *Bangs* v. *Mosher*, 23 Barb. 478. Extending the time of payment to the principal debtor by the creditor discharges the surety. (3 Denio, *supra*.) Suspending the right of action by the creditor, has the like effect, although but for a single day. (*Same cases*, and cases cited.) It follows, that the plaintiffs, having suspended the right to sue the maker upon the note, until the maturity of the check, the indorsers were thereby discharged. The judge, therefore, erred in not directing a verdict in their favor as requested. The order reversing the judgment and granting a new trial must be affirmed, and judgment final for the defendants upon the stipulation.

MILLER, J., (dissenting.) The main question which we are to determine in the case at bar is, whether the taking of the check of Nichols by the plaintiffs operated to suspend their right of action, so as to discharge the indorsers. The rule is well settled, that the mere taking of an obligation having time to run, from the party primarily liable, or a bill or note over due, does not operate to discharge the indorser,

unless there is an agreement, express or implied, that the new obligation is in payment of the former one, or extending the time of payment in favor of some other party, who is liable thereon prior to the indorser. (*Taylor* v. *Allen*, 36 Barb. 294.) Mere indulgence by a creditor, without a valid and express agreement to extend the time of payment, is not enough; but it must be an agreement which is obligatory upon the creditor, and one which is founded upon a sufficient consideration. (*Dorlen* v. *Christie*, 39 Barb. 613, 614.) The evidence upon the trial of this case does not, I think, present such a state of facts as would have authorized the court below upon the trial, to say, that an agreement was established within the rules laid down; and to direct a verdict in favor of the defendants, as was requested by the defendants' counsel. The testimony upon the trial showed that the check of Nichols was sent in a letter to the plaintiffs, with a request that they should keep it, and when paid the maker would call for the note. The letter also stated, that the plaintiffs, by accepting the check, would confer a favor. No answer was made to the letter, but the check was retained until due, and then presented for payment, and payment refused. The foregoing facts, which are undisputed, and present the legal question involved, did not, in my opinion, constitute a legal agreement to delay the collection of the note. There was no arrangement either express or implied, that the plaintiffs should delay the payment of the note, and, if they had prosecuted the note after the check was received, and before it was presented for payment, the retention of the check would not have been a valid defense to a recovery upon the ground that it was a payment, or that the time had been extended. If any agreement to extend the time can by possibility be inferred, when was it made, and for what length of time was payment delayed? Could a suit brought the next day after it was received, or at any other time before the check was due against the maker, be necessarily defeated by reason of the note not being due? It will be seen, that it is exceedingly difficult to establish a valid agreement, either express or implied, to extend the time of payment of the note

from the reception of the check, its retention and presentation. These, as well as the other facts proved, which were controverted, have some weight and bearing upon the question arising as to the intent of the plaintiffs in keeping the check, which was submitted to the jury upon the trial; but they do not establish affirmatively or conclusively, as a matter of law, a positive or implied agreement to give time. Whether the check was received and retained, with the intention of extending the time of payment, and both parties so understood it, was a question which the judge upon the trial left for the jury to determine, and, as they have found against the defendants, I do not think their verdict can be set aside as the evidence stands. It may also be remarked, that it would be a novel doctrine to hold that the simple act of forwarding a check to a party, to be applied on a note, when the avails were realized, and its retention, with no specific agreement in regard to it, and no receipt given, should have the effect to discharge the indorsers, and lead to much embarassment and difficulty in reference to negotiable paper. If the check was retained and proved to be worthless, the indorsers would be released. If returned, as would seem to be essential, if the retention of it authorizes the inference that an agreement to extend the time was made, then the payment might be delayed, and, perhaps, the collection of the note of the maker, so as to injure the indorsers. No such extraordinary degree of vigilance is required, as to demand that the holder of a bill or note shall define his position immediately upon receiving a check, at the hazard of discharging the security, and, unless the surrounding circumstances in connection with the retention prove an extension of the time of payment, it is not necessarily to be presumed, that the time was extended.

Independent of the consideration to which I have adverted, there is, I think, another difficulty in establishing an agreement to delay, and that is, that the taking of the check by the plaintiffs was not a sufficient consideration, for the agreement to extend the time of payment. The plaintiffs received no advantage from it. It was not an additional security,

which insured or strengthened the payment of the debt which was then due. It was an obligation of the maker alone, and did not add a single iota to the safety of the plaintiffs' demand, and there was no consideration of benefit on the one side, or harm on the other, sufficient to sustain an agreement. The check itself was worthless, of no value whatever, and the making and forwarding of it, as was done, does not present a case like that of a note given upon settlement of an account for goods sold, where the demand is liquidated, which is a benefit to the creditor, or one where a new note or bill is given, whereby the creditor acquires a negotiable instrument, which may be used more advantageously than a note or bill past due. (*Myers* v. *Willis*, 5 Hill, 464.)

There was no error, I think, in admitting one of the plaintiffs to testify, upon the trial, that he did not tell Nichols that he would hold on until the note matured. Nichols had sworn that he did, and the evidence was admissible to contradict Nichols' testimony on this point if for no other purpose. It was, also, proper to show the circumstances under which the stipulation made upon the previous trial was executed, and that the admissions made were limited to that trial alone. The right to controvert the statement of facts agreed upon on the first trial, depends, perhaps, upon the fact whether the agreement was limited to that trial alone. There was a dispute in regard to this, and the testimony on the subject was conflicting, at least there was a question for the jury upon this point, and hence it was competent to introduce evidence which was in conflict with the stipulation, if it was not otherwise admissible.

I discover no error upon the trial, and I think the judgment of the General Term should be reversed, and the judgment of the trial court affirmed.

Judgment of General Term affirmed.