JOSEPH MAIER, Appellant, *against* JOHN CANAVAN, IM-
PLEADED WITH THOMAS MORAN, Respondent.

(Decided May 5th, 1879.)

Where a retiring partner who had surrendered all the firm assets to the continuing
partner, under an agreement with such continuing partner that he should pay all
the firm debts, notified one of the firm creditors of such dissolution and agree-
ment and said to him, " Go and get your money, there is enough to pay you:"
*Held,* that this was not a request to the creditor to sue the continuing partner.

Where a creditor took notes of his debtor for a part of an open account, and credited
the notes on the account and struck a balance after deducting them, *Held,* that in
the absence of opposing testimony as to whether the notes were given as collat-
eral security or in payment, the giving of the note suspended the right to sue for
so much of the open account as was embraced in the notes.

Where a retiring partner surrendered all the assets of the firm at its dissolution to
the continuing partner, under an agreement that the latter should pay the debts
of the firm, and notified the creditors of the firm of such dissolution and agree-
ment,—*Held,* that he was thereafter liable for the firm debts only as such, and that
a firm creditor who accepted from the remaining partner his individual notes
for a portion of his debt discharged the retiring partner from further liability for
the debt.

APPEAL from a judgment in favor of the defendant Can-
avan, entered upon a decision of the general term of the
Marine Court of the city of New York, reversing a judg-
ment entered upon a verdict for plaintiff directed by the
court at the trial, and from an order of said general term
directing a new trial.

The action was brought to recover an unpaid part of the
price of goods sold and delivered to the defendants, who at
the time of the sale and delivery were copartners, composing
the firm of Moran & Canavan. By agreement between the
two partners the firm dissolved, Moran keeping the firm assets,
continuing the business, and agreeing to pay the firm debts.
After the dissolution, Canavan informed plaintiff of it and

advised him to go and get his money of Moran, as the latter had all the assets and there was enough to pay him. Plaintiff afterwards took two individual notes of Moran for part of the debt, which were paid. This action was brought for the part of the original debt remaining unpaid after crediting the amount of the two notes, and the complaint alleged the facts, showing the liability of the defendants as copartners. No answer was put in by the defendant Moran. Canavan in his answer alleged the dissolution of the firm; that all the assets were left in the possession of Moran; that they were sufficient to pay all the debts; that Moran agreed to pay all the debts; and that plaintiff, for a valuable consideration, agreed to, and did, discharge Canavan from all obligation. No evidence was produced to show that the assets left with Moran were sufficient to pay the firm's debts, nor as to whether Moran was solvent at the time of the dissolution; nor was it proven that Moran was insolvent afterwards.

At the close of the evidence the defendant's counsel requested the court to direct a verdict for the defendant, and also requested to go to the jury. The requests were denied, exceptions taken, and the court directed a verdict for the plaintiff on the ground that there was no defense. A motion on the minutes for a new trial was made and denied.

*Geo. H. Yeaman*, for appellant.

*Eugene H. Pomeroy*, for respondent.

VAN HOESEN, J.—The defendant utterly failed to bring his case within the rule under which a surety is relieved by the neglect of the creditor to prosecute the collection of his demand against the principal debtor. There was no legal evidence that the principal debtor was solvent when the surety requested the creditor to sue, and that he was insolvent afterwards. The case in the court below seemed to turn upon a supposititious state of affairs rather than upon the case made by the evidence. In *Huffman* v. *Hulbert* (13

Wend. 377) it was decided that in order to release the surety it must appear that the debt was collectible by due course of law _out of the property_ of the principal, and not merely that if hard pressed the principal might have paid had he chosen to do so. In _Herrick_ v. _Borst_ (4 Hill, 650) it was said that the mere probable solvency of the principal in reference to the debt in question, at the time of the notice to prosecute, would not suffice to release the surety. The defense is not to be encouraged (4 Hill, 656). Now, in this case, the defendant, upon whom the burden devolved of showing the solvency of Moran, the principal debtor, at the time of the request to prosecute, refrained from any attempt to prove what Moran's pecuniary condition was at that time. He went no farther than to say that he told Maier that there was money enough to pay him. It is strange that he omitted to make any further reference to the all-important subject of Moran's pecuniary condition at the time of the dissolution of the firm. Had Moran any property subject to execution at that time? Was he able to pay his debts as they fell due? Were there past-due claims against him which he had not paid? Was he not just as solvent at the time of the trial before Judge MacAdam as he was at the time Canavan told Maier to go and get his money? These are matters about which the defendant's counsel did not ask any questions, nor offer any proof. It will be seen that there was no evidence at all that Moran was solvent when Canavan informed Maier of the dissolution.

But there was very slight evidence, if, indeed, there was any, that Moran subsequently became insolvent. Canavan swore that he did not know whether Moran was insolvent or not; he had recovered a judgment against Moran, but it did not appear that any execution was ever issued, and it may be that proceedings had been stayed by appeal, or by an order of the court. Insolvency is not to be shown by such testimony as that. Upon exactly the same evidence men of great wealth in unencumbered land in this city could be proved insolvent. It was further proved that the claim in suit had not been paid, but that fact would not establish the

defense. It was necessary to show that other just claims which were past due had not been paid.

I think, moreover, that Judge MacAdam properly decided that the words, " Go and get your money; there is enough to pay you," did not amount to a notice that Canavan re· quired Maier to sue Moran. The notice must be clear and unambiguous, and one not likely to be misapprehended by the creditor. It must apprise him that a resort to legal process is required of him by the surety. A collection of cases upon the subject may be found in Vol. 3, Wait's Law of Action and Defences, pp. 235 and 236. Thus, it has been held that to say : " I hope the note may be put in train for collection," is not enough. Nor is a notice saying : " I wish you to collect the debt from the principal," sufficient. In our own State it has been decided that a request " to push and keep pushing " the principal, did not import a request to bring an action against him. (*Singer* v. *Troutman*, 49 Barb. 182.) Of course the words "go and get your money,'' could not have conveyed to Maier's mind the idea that he was required to sue Moran without delay. The surety is bound to make his meaning understood by using words that to a man of common understanding convey a request to sue. The defense failed in this respect.

It is said, however, that Maier accepted notes payable at a future day, and thus suspended his right of action against Moran. If the right of action against Moran was suspended for an hour Canavan is released. The law of New York is not settled as to whether the taking of a note payable at a future day operates as a suspension of the right to sue on the original cause of action. In the Court of Appeals, as in the Supreme Court, there is no difficulty in finding decisions to sustain any view of the law that a suitor may wish to see prevail. *Pratt* v. *Coman* (37 N. Y. 440) and *Place* v. *McIlvain* (38 N. Y. 96) holds, that accepting a note payable in future suspends the right of action on the original debt : *Cary* v. *White* (52 N. Y. 138) holds that it does not. In *Hubbard* v. *Gurney* (64 N. Y. 467), the Chief Judge says that there must be an agreement, either expressed

or implied, that the original debt shall not be sued upon until the new note matures, in order to effect such a suspension of the right to sue as will discharge a surety. The difficulty is, to determine from what circumstances such an agreement will be implied. In *Hart* v. *Hudson* (6 Duer, 304) Duer, J., said: "Taking a note payable at a future day was proof conclusive of an agreement to extend credit, and would discharge the surety." In *Elwood* v. *Deifendorf* (5 Barb. 409) Paige, J., said, that taking from the principal debtor, for an old debt past due, a new note payable at a future day without an agreement to extend the time of payment does not discharge the surety. It is somewhat singular that Judges Duer and Paige agree in this, that the law is perfectly well settled. There was nothing proved in this case on the subject of the notes, except that Moran gave them after the dissolution. Are we to adopt the views of Judge Duer and the views of Judge Grover in *Place* v. *McIlvain*, or the views of Judge Paige, and of Judge Allen in *Cary* v. *White?* My own notion is that we should adhere to the views which this court announced when the case of *Place* v. *McIlvain* was before it in 1863. The decision is reported in 1 Daly, 266. I am prepared to adopt the language of Chief Justice Daly: "Where all that appears is, that a creditor, after a note becomes due, takes from the maker a new note, payable at a future day, the conclusion must be that the parties have agreed to extend the time of credit until the suppletory instrument becomes payable; and if such an agreement is founded upon a sufficient consideration it is binding. Giving a note for an open account is a good consideration for an extension." It may appear, however, either by direct testimony or from the circumstances, that the new note was taken by the creditor with the understanding that it was only collateral security, and that he might at pleasure sue upon the original debt. If this does not appear from the evidence of the defendant it devolves upon the creditor to prove it; and if he fails to do so, the inference will be that the right of action on the old debt was suspended. Such being then my opin-

ion of the law, the question is, did the notes which Moran gave to the plaintiff suspend his right to enforce the payment of the claim? The notes were for portions of the entire demand which Moran and Canavan owed the Maiers. They have been paid, and are out of the way. If there were anything in the evidence to make it doubtful whether or not an agreement existed for an extension of the time for the payment of such parts of the debt as were represented by the notes, it would have been for the jury to determine as to its existence or non-existence. But the testimony of the plaintiff and his brother showed that they retained the notes, credited them in the account, and struck a balance after deducting them. In the absence of opposing testimony it was, I think, for the court to say that the notes suspended the right to sue the defendant Moran for so much of the demand as was embraced in the notes. If this be so, the defendant was discharged because Maier, whilst the notes were maturing, could not have conveyed to Canavan an immediate right to prosecute Moran. Canavan, if he applied to Maier for a transfer of the latter's claim against Moran, could only have obtained what Maier had—a right to sue Moran when the note arrived at maturity. As to the residue of the claim, of course, Maier might have given an immediate right to prosecute it. Canavan could not have been called to accept such an assignment; and he is therefore discharged. (*Ducker* v. *Rapp*, 67 N. Y. 472; *Croydon Gas Co.* v. *Dickinson*, 4 Weekly Digest, 381.) There was but one contract, and that without any provision for the payment by instalments; and the suspension of the right to sue immediately for any part of the money destroyed the claim against the surety.

The judgment and order appealed from should be affirmed with costs, and judgment absolute rendered for the defendant. Leave to appeal to the Court of Appeals should be given if desired.

CHARLES P. DALY, Ch. J., concurred.

Ordered accordingly.