GREEH, J.
(concurring).-—The guaranty is dated January 25, 1894:
“ I hereby guaranty * * * the payment for all bills for coal shipped to * * * . to the amount of $1,500 per month.
The understanding between all the parties is that at no time shall there be standing more than three months’ shipment of coal.”
At different times between April 13 and May 15,1894, plaintiffs, sold and delivered to Harwood & Irish coal to the amount of $970.74, which was the last monthly balance of coal sold and delivered to them, and no further shipments of coal were ever made. On June 23, 1894, notes of different amounts were given by Harwood & Irish, for the sum of $970.74, which notes were payable at different times. On the 21st of September, 1894, the amount had been reduced by payments to $760.43, at which time a new note was given for that amount, payable Hovember 8, 1894, when there was paid on the note $260.43 and interest to that date. Thereupon Harwood & Irish gave two new notes; one for $250, payable in twenty days, and the other for the same amount, payable in one month. On December 3d $100 was ¡laid on the first note, and a new note given for $150, payable in 15 days, and was paid on January 8, 1895. When the second note became due, and on December 10, 1894, $50. was paid thereon, and a new note given for $200, payable January 14, 1895, when another note was given for the same amount, payable in one month. This note not having been ¡laid at maturity, the plaintiffs, on the 25th of February, 1895, drew a draft on Harwood & Irish for that amount, payable at three days’ sight, but this draft was never paid. Thereupon the plaintiffs brought this action against the guarantor for the recovery of the amount due.
It may be assumed that the notes executed June 23, 1894, were impliedly authorized by the guaranty, but it does not follow that the successive notes were within the contemplation of the guarantor. Ho doubt a period of credit was contemplated, but when the parties fixed the time for payment, and the debtor defaulted in payment, in whole or in part, the plaintiff was not justified or warranted by anything expressed in the guaranty to further extend the period from time to time, and suspend his right to enforce payment, without the assent of *756 the guarantor. During these suspensions the guarantor was prevented from proceeding against the principal upon payment of the debt, nor could he compel the plaintiffs to proceed. In view of the authorities hereafter quoted, it seems that the guarantor must be held discharged, because the extensions of credit were not fair and reasonable, as to him, in point of law and equity, though as a matter of fact it may have been otherwise. This is not only the law, but it is also justice and equity; at least courts of equity say it is, though there is every reason' to believe otherwise in this case. "What is “ giving túne ” was thus defined by the court in Howell v. Jones, 1 Cromp., M. & R. 107, in the following terms :
“We think it means extending the period at which, by the contract between them, the principal debtor was originally liable to pay the creditor, and extending it by a new and valid contract between the creditor and the principal debtor, to which the surety does not assent.”
Although the general meaning of the expression “giving time ” is thus defined, it is sometimes difficult to say what really was “ the period at which, by the contract between them, the principal debtor was briginally liable to pay the creditor.” This sometimes has to be ascertained from the terms of the original contract between them. And in such cases the words used must have a reasonable interpretation. Thus, in Simpson v. Manley, 2 Oromp. & J. 12, a guaranty ran as follows:
“ ‘ If you give A. B. credit, ive will 6e responsible that his payments shall be regularly made.’ The question having arisen whether 'there had been a giving of time to A. B., it became necessary to decide when A. B. was, under these terms, bound to pay the creditor. The court held that the word £ credit ’ meant a fair and reasonable credit, according to the manner in which A. B. and the persons guaranteed should deal, and did not confine the guaranty to dealings according to the strict, customary credit of trade.”
Custom of trade cannot enlarge the express words of the guaranty. See Holl v. Hadley, 5 Bing. 54.
In Combe v. Woolf, 8 Bing. 156, defendant guarantied the payment of porter to be delivered by plaintiff to J., the guaranty containing no stipulation as to the credit to be given to J. The custom of the trade was to give six months, and then, sometimes, to take a bill at two. The plaintiffs having, without the knowledge of the defendant, given J. eleven months’ credit, the defendant was held discharged from his guaranty. Tindal, C. J., said:
“ The plaintiffs allow three months to elapse after the six, and are then paid by a note at two, thus virtually giving a credit of eleven months; and this, not as a matter of favor which they might afterwards 'repudiate, but as a right on which Joseph might insist, for, after the receipt of the note, payment could no longer be demanded till it had run its time. Although no specific time of payment is fixed by the guaranty, *757 yet it must be implied that the guaranty was given on the supposition that the debtor would not have more than the usual credit. But how, it is said, is the situation of the surety altered by this ? At the end of eight months he had a right to inquire whether the debt had been discharged, and, if he found it still due, to take his measures against the debtor accordingly; Avhereas, if the creditor could, without his assent, extend the credit to an unlimited time, the surety might be discharged of all remedy by the subsequent insolvency of the debtor.”
Park, j., remarked that there was a positive prevention of any suit by the principal creditor, for when he had tied up his own hands for months the surety could make no claim at the' expiration of the usual time; and it is by the risk that the debtor may become insolvent in the intermediate time that the surety is injured. Bosanquet, J., observed that:
“ Although the surety has not stipulated for any particular credit, the course of dealing between the plaintiffs and their debtor was altered, and the usual time of credit extended. It is admitted that the surety could not be sued during the time of the extended credit, which has been given without any notice to him; but it is contended that his liability revives after the extended credit has expired. But how is the claim against the surety supposed to be extended ? Hot by agreement between the parties, but by operation of law. In other words, if an action were brought against him during the extended time, the indulgence given would be a bar to the action. If, however, it wmuld, under such circumstances, be a bar at any time, it is a bar forever.”
•—Referred to as authority in Hunt v. Smith, 17 Wend. 179.
In Samuell v. Ilowarth, 3 Her. 272, 17 Rev. Reports, 81, defendant guarantied the payment of any goods to be supplied by plaintiff to 0. between the 2d of April, 1814, and the 2d of April, 1815. Although no period of credit was specified, this could not be taken as a guaranty for an unlimited period, but to be restrained by the usual course of trade, and, 0. having accepted bills for the amount of the goods delivered, which plaintiff permitted him to renew when payable, without any communication to defendant on the subject of such renewal, it was held that defendant was discharged, even though the renewal was given only in consequence of O.’s inability to pay, and that no injury could accrue to defendant; the surety being himself the fit judge of what is or is not for his benefit.
In Petty v. Cooke, L. R. 6 Q. B. 794, a very able judge (Blackburn) said:
“ I think it impossible to read the principle laid down by Lord Eldon (3 Her. 272) without thinking that it is based on highly technical reasoning, however accurate it may be. * * * But that time given by a creditor, which in numberless instances does not injure the surety, should ’discharge him, is to my mind not justice, although established by courts of equity.”
*758 The principle and reasoning in Hunt v. Smith, 17 Wend. 179, although not exactly in point, have application to this case, in respect to the renewals of the notes here. There the guaranty did not contemplate a time credit; here a credit for some time was contemplated, and when the time was fixed by the notes of June 23d any further extension could not be given without the assent of the guarantor. See, also, Cochrane v. Kennedy, 10 Daly, 346.
Where a guaranty is given to a bank to secure advances on drafts and notes, the guaranty may be construed to apply to successive advances, acceptances, and indorsements which would be renewed and discharged from time to time. The reason why this should be so is stated in Bank v. Hall, 83 N. Y. 343-346. And this is assumed in Bank v. Phelps, 86 N. Y. 484, 491; but there the surety assented to the renewal notes.
The principle is well established by a long series of decisions in this state that the taking of a negotiable bill or note from the debtor, payable on a future day, suspends until then the creditor’s right of action for the original debt, and therefore operates, in all cases, as an extension of credit, by which not merely an ordinary surety, but an indorser, not assenting to the transaction, is discharged; that a negotiable note taken from a debtor, even as between the immediate parties, is a conditional satisfaction of the debt which forms its consideration; and that in respect to a surety, whether a guarantor or indorser, whose assent to the transaction is not proved, the satisfaction which it works, and of which it is evidence, is absolute. When a note is given upon an account, or for goods sold, the demand is thereby liquidated, which is a benefit to the creditor; or if, after a note is due, a new note or bill for the amount of the debt is taken from the debtor, payable at a future day, the creditor acquires a negotiable instrument, which may be used more beneficially than a note which is past due; and these considerations constitute a sufficient consideration to support the agreement implied from taking the note. In other language, where a negotiable note, payable at a future time, is taken by the creditor, he receives some benefit or advantage, as he may use the note in the market as commercial paper, and get it discounted at a bank; and any benefit, however small, is sufficient to constitute a consideration. Hart v. Hudson, 6 Duer, 304, 305; Eisner v. Keller, 3 Daly, 488-494; Platt v. Stark, 2 Hilt. 399; Maier v. Canavan, 8 Daly, 275-277; Tobey v. Barber, 5 Johns. 72 (the court speaks of a note for a “ preexisting debt”); Putnam v. Lewis, 8 Johns. 389 ; Myers v. Welles, 5 Hill, 463; Fellows v. Prentiss, 3 Denio, 518, 520, 521, 523 ; Bangs v. Mosher, 23 Barb. 481; Dorlon v. Christie, 39 Barb. 610; Insurance Co. v. Devendorf, 43 Barb. 446 ; Dodd v. Dreyfus, 17 Hun, 600; Menke v. Gerbracht, 75 Hun, 181; 26 N. Y. Supp. 1097; Pratt v. Coman, 37 N. Y. 443; Place v. McIlvain, 38 N. Y. 96, affirming 1 Daly, 266; Pomeroy v. Tanner, 70 N. Y. 550 (seems to recognize the principle, as it *759 cites cases above, but there was a clear agreement); Bank v. Burns, 46 N. Y. 177 ; Fleischmann v. Stern, 90 N. Y. 115. Cary v. White, 52 N. Y. 138, is not inconsistent; merely holds that taking collateral security (mortgage) does not per se, extend payment of debt, and mortgagee is not a purchaser for value within recording acts. Distinguished in Hubbard v. Gurnev, 64 N. Y. 468.
In Hubbard v. Gurney, 64 N. Y. 466-468, Church, C. J., states the general principle as well settled, and then makes this qualification-:
“ To establish a case, however, within the rule laid down, it is essential that it should be made to appear that there was an agreement, express or implied, from the facts proved, that the new note was taken in payment of the first note, or that the time of payment of the latter was extended in favor of the party who was primarily liable.”
He cites many of the cases above, and yet those cases lay down the rule without qualification. It will be observed, from a careful reading, that the court ivas led to state the rule with this qualification because the plaintiff was contending that the note of the husband was taken, or should be held to have been taken, as collateral security for the original note signed by himself and wife ; but the court held that the circumstances indicated clearly that it was the intention to substitute the single note for the joint note, and the plaintiff received the money at the bank.
It may be that the taking of the individual note of the principal debtor, upon default in payment of the prior note signed by the surety, will not, of itself, suspend the right of action on the prior note, or extend the time of payment; that it may be presumed collateral. However that may be, take the case of a debtor giving his note for an existing indebtedness or a liability accrued. Judges Duer and Daly, especially, have clearly shown that the taking of the note operates per se as a suspension of the right of action, and consequently as an extension of time. The law implies an agreement to extend the time, to forbear suing upon the debt, until after the maturity of the note. So, in respect to such a case, the qualification stated cannot apply, for when you prove the giving and receipt of the note you prove the agreement to suspend action and extend time. If you compare the words of the “qualification ” with the statement of the rule laid down in Taylor v. Alien, 36 Barb. 297, it will be observed that there is much similarity,—the same substance, though not cited by Judge Church. For in 36 Barb. 297, the rule is stated to be that the receipt of a bill or note does not operate to discharge an indorser on the overdue note, unless there is an agreement, express or implied, extending time of payment. But there the court was considering whether or not the draft was intended as collateral security, that it became a question for the jury, -etc. But this case is criticised and condemned by Judge Daly *760 in Eisner v. Keller, 3 Daly, 488-494. As there can be no. question here as to the note being taken as collateral security, that matter is irrelevant and immaterial. But it may be remarked that the qualification to the principle, as stated by Church, J., is not supported by the cases cited, but, on the-contrary, is diametrically opposed to the rule there laid down.
In regard to Graham v. Negus, 55 Hun, 440, 29 S. R. 114, and Fuller v. Negus (Sup.), 8 N. Y. Supp. 681, it is clear that the rule there stated is inconsistent with the rule as stated in the book since the beginning of the century. According to the same reasoning, every renewal note would he of no legal effect in extending time, unless there was some new consideration. It is impossible to reconcile these cases in principle and reasoning with the ones we have cited. The cases cited by Judge Daniels do not support, and the “ expressions ” in one of them at least are against him. Fleischmann v. Stern, 90 N. Y. 110, citing Putnam v. Lewis, 8 Johns. 389, and Fellows v. Prentiss, 3 Denio, 518. The New Hampshire case (Moore v. Fitz, 59 N. H. 572) supports Justice Daniels in his decision, but that court decided against the New York authorities which were cited by defendants’ counsel, and the court arrayed against him many citations of their own former decisions.
The judgment should be affirmed, with costs.
FOLLETT, J., concurs.