(102 App. Div. 94.)

### DOUGLAS v. MILLER et al.

(Supreme Court, Appellate Division, Fourth Department.　March 1, 1905.)

1. MORTGAGES—PAYMENT—EVIDENCE.
　　In a suit to foreclose a mortgage, evidence reviewed, and *held* insufficient to establish a defense of payment.

2. SAME—BONA FIDE PURCHASER.
　　The holder of a mortgage given to secure an antecedent indebtedness of the mortgagor on an order discounted by the mortgagee bank, together with notes given in renewal of unpaid balances of such indebtedness, was a holder for value, under the recording act, and was therefore entitled to priority as against a prior mortgage which was not recorded until after record of the bank's mortgage.

Appeal from Judgment on Report of Referee.

Action by William A. Douglas, as receiver of the First National Bank of Springville, against Laurentine Y. Miller and others. From a judgment in favor of plaintiff, defendant Laurentine Y. Miller appeals. Affirmed.

Following is the opinion of W. S. Thrasher, referee:

This is an action brought to foreclose a mortgage on real estate made by the defendant Laurentine Y. Miller to the First National Bank of Springville to secure the payment of a note of even date for $2,500 due in three months, and to secure the renewals, or part renewals, of the same. This plaintiff is the receiver of the bank, and as such is entitled to maintain this action in the same manner that the bank might have done. The principal defense set up by the answer of Laurentine Y. Miller is payment. Abram Miller, another defendant, answers that he is the holder of another mortgage, which is a superior lien to that of the plaintiff's mortgage.

The defense of payment has not been established. The facts in this case on which depend the question of priority of lien may be stated in this way: The defendant L. Y. Miller made his mortgage to the defendant Abram Miller, his father, on the 11th day of August, 1893, "as security for the payment of $2,500.00 and interest" one year from the date of the mortgage, and Abram Miller failed to record such mortgage until October 12, 1896. This mortgage was for a present consideration of $600 paid, the balance being for prior indorsements and precedent indebtedness of L. Y. Miller. On November 8, 1893, L. Y. Miller made the mortgage in suit for $2,500 to the First National Bank of Springville as security for a note of like date and amount, due in three months, and to secure any renewals or part renewals of the same. The bank failed to record this mortgage until October 21, 1895, but it was recorded about a year before the record of the Abram Miller mortgage. The immediate consideration for the note and mortgage made to the bank was the surrender of a certain town order for $2,500 indorsed by Miller and by W. O. Leland, representing an indebtedness of Miller to the bank for that amount, and which order had been discounted at the bank about one year previously, with W. O. Leland's indorsement.

The bank, when it took such mortgage, and surrendered the town order, with Leland's indorsement, had no notice, actual or constructive, of the Abram Miller mortgage, nor had the bank such knowledge when it recorded its mortgage; and so the question of priority comes to depend upon the other question of whether the bank was entitled to the position of a bona fide holder, as against the prior unrecorded lien, within the recording act.

To constitute the bona fide holder of a mortgage, there must be a parting of money or property, or the doing of some irrevocable act, on the faith of the mortgage itself. Dickerson v. Tillinghast, 4 Paige, 215, 25 Am. Dec. 528. If the surrender of the town order and the taking of this note and mortgage suspended the right of action of the bank to recover the debt against Miller and Leland represented by this town order, then there was such irrevocable act on the faith of this mortgage as would bring the case within the rule stated. On the other hand, if the bank parted with nothing, and were at liberty to pursue the remedy to recover the money of Miller, or the indorser on the town order, then there would be no ground for saying that the bank placed itself in any worse position, if the security taken should fail.

The rule undoubtedly is that the mere taking of security for a precedent debt, or in payment of it, will not constitute the holder of the security a holder in good faith, as against prior equities, where the right of action on the debt was not suspended, and the creditor has parted with nothing of value. Delancey v. Stearns, 66 N. Y. 157; Howells v. Hettrick, 160 N. Y. 310, 54 N. E. 677, and cases cited; Cary v. White, 52 N. Y. 138. In this case, however, the bank did surrender the obligation with Leland's indorsement, and so lost their right of action against him thereon, as well as extending the time of payment of the indebtedness of Miller. No express agreement outside of the written instruments is shown, providing for an extension of time; but the transaction itself gives rise to the presumption that the agreement existed, and there was a sufficient consideration for such agreement in the giving of the mortgage security. The conclusion of fact follows that there was an agreement which suspended the bank's right of action on the original indebtedness for the time named in the note and mortgage. Place v. McIlvain, 38 N. Y. 96, 97 Am. Dec. 777; Porter v. Thom (Sup.) 51 N. Y. Supp. 974.

The principle underlying the cases which hold that the taking of a note or security for a precedent debt will not alone save the security, as against prior equities, seems to be that an agreement binding upon the parties must exist, either by express stipulation or necessary implication, to extend the credit beyond the time of the transaction. If such an agreement exists, then the creditor has irrevocably surrendered a right, and the debtor has secured an advantage; and such an agreement has been inferred in many cases from the mere surrender of the old obligation, and the taking of the new on time. Youngs v. Lee, 12 N. Y. 551; Pratt v. Coman, 37 N. Y. 440; Brown v. Leavitt, 31 N. Y. 113; Paddon v. Taylor, 44 N. Y. 371; Clothier v. Adriance, 51 N. Y. 322. Within the rule of these cases, there can be no question but what Miller could have successfully resisted an action upon the original in-

debtedness commenced within three months after the filing of the mortgage, upon the ground that a valid extension of the time of payment had been made, which bound the bank; and that fact might be found from the written instruments exchanged, without other evidence of the agreement to give further credit. If so, then this bank mortgage must be held superior to the prior mortgage of the defendant Abram Miller.

The plaintiff is entitled to judgment.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Dana L. Jewell, for appellants.
A. C. Spann and George W. Gillette, for respondent.

WILLIAMS, J. The judgment should be affirmed, with costs.

The action was to foreclose a mortage upon real estate, dated November 8, 1893, made by the defendant L. Y. Miller to the plaintiff's bank to secure payment of a note for $2,500 of the same date, and the renewals thereof. The foreclosure was for the balance unpaid, represented by a renewal note of $750, dated August 12, 1896. The defendant L. Y. Miller answered, alleging payment. The defendant Abram Miller answered, alleging payment, and that the mortgage held by him, dated August 11, 1893, but not recorded until after the record of plaintiff's mortgage, was a lien upon the property superior to that of plaintiff's mortgage. The referee decided against both of these defenses, and these defendants alone appeal.

The defendant L. Y. Miller was a produce dealer living at Hinsdale, N. Y., and the defendant Abram Miller was his father. The plaintiff bank was located at Springville, N. Y.; was organized February 13, 1883, and suspended September 26, 1896. W. O. Leland was its president, and lived at Hinsdale. H. G. Leland, a son of the president, was vice president of the bank. E. O. Leland, another son of the president, was cashier of the bank. The sons resided at Springville, and had immediate charge and management of the business of the bank. In December, 1893, L. Y. Miller was supervisor of the town of Hinsdale, and as such held an order for $2,500, dated December 2, 1893, drawn by the town clerk, and payable to such supervisor. Miller indorsed this order over to President Leland, and delivered it to him. Leland indorsed it over to the plaintiff bank, and sent it to Springville, and it was discounted by the bank December 7, 1893, and put to the credit of President Leland. The order was held by the bank until November, 1893, when it was surrendered up to L. Y. Miller, and about this time the note and mortgage sought to be foreclosed were given. The plaintiff claims the note and mortgage were given to take up the order, while the defendants claim they were given to consolidate old notes of L. Y. Miller, which, aside from what he had paid thereon in money and paper, amounted to about the $2,500. The referee found, as matter of fact, that plaintiff's contention was correct, and we do not, after an examination of the evidence, feel that we should interfere with that finding. There was a serious conflict in the evidence, and the referee, having had the witnesses and the books and papers before him, was in a better position to judge where the truth lay, than we can here. This fact being found for the plaintiff, the

question is still presented whether the bank is a holder for value under the recording act. This question is fully discussed by the referee in an opinion written by him in the case, and we think nothing need be added here. We agree with him as to the conclusion he arrives at— that the bank was a holder for value of the mortgage, and was protected as such by the recording act. Its mortgage was therefore a lien superior to that of the defendant Abram Miller. The claim of payment is based upon the proposition that when the $750 note became due, in September, 1896, there was money in the hands of the bank sufficient to pay the same. It is claimed that this money came into the hands of the bank from the discount of a $1,200 note made by L. Y. Miller, and indorsed by his wife and by President Leland, and discounted by the state bank of Sherman; that a draft for this amount was delivered to President Leland, who on the 3d day of April, 1893, deposited the same in the Hanover National Bank of New York, to the credit of plaintiff bank; that the note was subsequently paid by L. Y. Miller; that he had credit on President Leland's books for $136.80 of the $1,200, and never had the benefit of any other part of such amount. There is no doubt as to this note transaction having taken place as claimed, and that the $1,200 came to the plaintiff bank, having been deposited to its credit in New York. The only question is whether L. Y. Miller had at the time the full benefit of the money. President Leland says he did; that it was all used to pay liabilities of L. Y. Miller, except the $136.80 for which he gave him credit on his books. This is disputed by L. Y. Miller, and thus a question of fact exists between them. The referee, after taking and considering all the evidence upon this question, found with the plaintiff, and against the defendant L. Y. Miller. We are not inclined to interfere with that finding. The $1,200 note transaction occurred back in April, 1893. The note and mortgage were given in November, 1893. Then there were the various reductions of the $2,500 indebtedness and renewal notes given until August 12, 1896, when this $750 note was given. If the proceeds of this $1,200 note were in the hands of the bank all this time, and belonged to the defendant L. Y. Miller, why was it not applied in further reduction of this indebtedness at the time of the various renewals? There was some friction caused by the protest of some small checks of L. Y. Miller in the summer of 1893, and after that he didn't do much business with the bank, except what related to notes held by the bank upon which he was liable. It is hardly credible that this money should have been allowed to remain in the bank—he in the meantime paying the note on which it was obtained—and he have failed to insist upon its application upon his indebtedness to the bank. This note transaction in April, 1893, was had between the president, Leland, and L. Y. Miller. Whether Leland was acting for himself, as an individual banker, or for the plaintiff bank—whether the credit should, in the course of their business, have appeared on the bankbooks or only in President Leland's books—is not very material. L. Y. Miller, if he did not at the time have the benefit of this money, would have been likely to look after the same and get the benefit of it while he was paying the note on which it was obtained. It is pretty late to make a claim for this money, and that he had not had the benefit of it, away along in 1896, or later,

when this action was commenced, in August, 1897. It seems quite· clear that the defense of payment should fail. The referee did not think it necessary in his opinion to discuss the facts with reference to it at all.

Our conclusion, therefore, is that the referee properly disposed of the case, and the judgment should be affirmed, with costs. All concur.